PER CURIAM.
This cause is before us on petition by The Florida Bar, seeking review and modification of the recommendation of discipline for Respondent made by the Referee after a hearing on a two-count complaint against Respondent, which complaint was based on the outcome of two probable-cause findings by a grievance committee.
The facts appear as follows.
In Case No. 11D71-17, Respondent represented Mr. Sam Eauied in the sale of Mr. Eauied’s supermarket. The closing was held on February 1, 1971. Respondent withheld $624.69 of the proceeds from the sale in order to satisfy a chattel mortgage against fixtures included in the sale. Subsequent to the closing Mr. Eauied was informed by the bank holding the mortgage that it was in arrears and that they were about to foreclose. After several unsuccessful attempts to contact Respondent, Mr. Eauied was forced to pay off the mortgage with his own funds. Respondent did not reimburse the $624.69 to Mr. Eauied until after grievance proceedings were commenced.
In Case No. 11D71-19, Respondent represented Mary Ann Portell and her brother and sister in the sale of their jointly owned property located in Dade County. The Closing was held on March 18, 1971. Respondent received the proceeds of the sale and deposited it in his trust account. Ms. Portell’s share of the proceeds, $14,338.51, was issued to her in the form of two checks drawn on Respondent’s trust account. One of the checks was for $13,000 and the other one was for $1,338.-51. Upon receipt of these checks, Ms. Portell immediately deposited them in her bank account, and on April 27, 1971, she learned that the check for $13,000 had been returned marked “insufficient funds”. Ms. Portell obtained an attorney who wrote to Respondent demanding he make good the $13,000 check and also that he render an accounting of the disbursement of the sale proceeds. On April 26, 1971, before he was contacted by Ms. Portell’s lawyer, Respondent forwarded a $13,000 cashier’s check to Ms. Portell. At no time did the Respondent ever comply with Ms. Portell’s request for an accounting. The request for an accounting was prompted by the discrepancy between the selling price of $60,000 and the disbursement figure of $41,838.34. Although requested, Respondent failed to pay interest on the $13,000 amount involved in the bad check.
Upon examination by the Referee Respondent testified that he had a trust account established at Key Biscayne Bank, but that he had used this as an office account; that he had no separate office account and trustee account; that all funds coming into his office, whether trust, escrow or otherwise, were commingled in the Key Biscayne Bank trustee account. Further, Respondent testified that his personal use of these funds had created the shortage on the check to Mary Ann Portell. Although approximately five years ago Respondent had separate trust and office accounts, he established a new trust account with First State Bank only six weeks before the hearing. This was done at the recommendation of his CPA; however, as of the date of the hearing, Respondent had not put into effect the new accounting system recommended by the CPA.
The Referee found that Respondent had failed to maintain separate bank accounts for his personal use and that of his -clients; that he had one account in which all funds *11 were received and commingled; and that he did not have any method of bookkeeping which would reflect a balance in the account that were clients’ funds as against that portion which was his own. Further, the Referee found that Respondent commingled the funds entrusted to him as alleged in both count one and count two and that he did not pay the indebtedness owed his clients until after grievance proceedings were instituted or upon complaint made by the client. The Referee recommends that Respondent be found guilty as charged, and in particular, that he be found guilty of violation of Article XI, Rule 11.02(4) of the Integration Rule. As discipline, the Referee recommends that, upon entry of the verdict of guilty, it be suspended and that Respondent be placed on probation for a period of three years. Additionally, he recommends that the terms of probation shall call for an auditing and monitoring of Respondent’s accounting system and his method of operation; that Respondent be required to report; that investigation be made regarding the conduct of his personal account and the trust account; that he submit quarterly a statement of a CPA that he has conducted his books properly; that his personal monies and funds not be integrated with the trust and escrow funds; and that the quarterly report further reflect full compliance in all respects in his books and records of operation showing the full protection of any and all clients’ funds entrusted to him. Should Respondent fail to comply, the Referee recommends that he be disbarred.
Upon reviewing this report, the Executive Committee of the Board of Governors directed The Florida Bar to petition this Court to sustain the findings of guilt by the Referee in both counts, to assess the costs of these proceedings against Respondent and to suspend him for one year with proof of rehabilitation before reinstatement.
This Court has never tolerated misuse of trust funds, stating in State ex rel. The Florida Bar v. Ruskin :[1]
“Few breaches of ethics are as serious as the commingling of a client’s funds and the use thereof for a lawyer’s private purposes. . . . ”
The Ruskin case' is similar to the situation sub judice with the exception that in Ruskin the. attorney had made good faith attempts to rehabilitate himself even before the matter got to the Referee; even so this Court imposed a six months’ suspension. Although the Referee strongly recommended the Respondent institute new accounting procedures during the Referee proceedings, as of the date of the Referee’s report Respondent had not done so.
As stated in Ruskin, supra, the consideration that should go into an order of discipline is that the discipline should be fair to both the public and to the attorney, with an object of correcting “the wayward tendency in the accused lawyer while offering to him a fair and reasonable opportunity for rehabilitation . . .”.
Accordingly, it is the decision of this Court to sustain the findings of guilt by the Referee and to suspend the Respondent for six months with automatic reinstatement thereafter when Respondent proves that he has satisfied the following conditions: (1) that Respondent render an accounting to Ms. Portell of the disbursement of the sale proceeds; (2) that Respondent pay interest to Ms. Portell for the use of the $13,000 for the length of time during which she was deprived of the sum, such interest to be at the rate prevailing in April, 1971; and (3) that, as recommended by the Referee, Respondent establish a system of accounting to be approved by The Florida Bar. Furthermore, once Respondent has been reinstated, we place him on probation for a period of three *12 years, as recommended by the Referee; during his probation, Respondent shall submit to The Florida Bar quarterly statements of a CPA that he has conducted his books properly, that his personal monies are not integrated with trust and escrow funds, and that in all respects his books and records of operation show full and complete protection of any and all clients’ funds entrusted to him. Disbarment of Respondent should be considered only in the event of his failure to comply with the terms of his probation.
Respondent is allowed forty-five days to get his office affairs in order.' Execution is hereby directed to issue for the costs of this proceeding against Respondent in the amount of $758.05.
It is so ordered.
ADKINS, C. J., and ROBERTS, BOYD, OVERTON and ENGLAND, JJ., concur.

. 126 So.2d 142 (Fla.1961).